

B. McKay Mignault, Chief Bankruptcy Judge
United States Bankruptcy Court

**Dated: March 31st, 2021**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## IN CHARLESTON

| | |
|---|---|
| IN RE: | CASE NO. 2:19-bk-20134 |
| COROTOMAN INC., | CHAPTER 11 |
| Debtor. | JUDGE B. MCKAY MIGNAULT |

## **MEMORANDUM OPINION AND ORDER**

Pending is the Motion to Modify the Automatic Stay and Request for Abandonment (the "Motion") filed by Christiana Trust, as Custodian ("Christiana Trust") on October 30, 2019 [dckt. 82]. Creditor Katherine Forbes Wellford filed an Objection on November 12, 2019 [dckt. 94]. Corotoman did not file a written response or objection. A pre-hearing memorandum of legal authorities regarding service of the notice to redeem pursuant to W. VA. Code § 11A-3-22(b) and due process was filed by Christiana Trust on July 14, 2020 [dckt. 194].

The Motion came before the Court several times, culminating in an evidentiary hearing held on July 15, 2020 (the "Hearing"). Following the Hearing, the Court deemed the evidentiary record closed, and further indicated its willingness to accept post-hearing briefs in lieu of closing arguments. The Court notes that no post-hearing brief has been filed by any party. The matter is ready for adjudication.

**I.**

**A.**     **Procedural and Factual History**

Corotoman, Inc. ("Corotoman") is a West Virginia corporation with its offices and principal place of business in Charleston, West Virginia. John Wellford, the husband of creditor Katherine Wellford, is the president and owner of the Debtor. Corotoman owns a significant amount of real property. According to its schedules, the lots combined have an aggregate value of $2,300,000. Corotoman failed to pay the 2016 real estate taxes for two of those lots described in Schedule A/B as follows:

> (1) 173-724/1000AC M/L NORTHGATE BUSINESS PARK (the
>
> "Northgate Property"); and
>
> (2) 17-36/100A M/L COAL BR APCO TR NORTHGATE
>
> BUSINESS PK (the "Association Drive Property," collectively with
>
> the Northgate Property, the "Properties").

On November 16, 2017, the Sheriff of Kanawha County held a tax sale for non-payment of real estate taxes assessed against the Properties for the year 2016 (the "Auction"). At the Auction, Christiana Trust submitted the highest bid for the Properties, and thus, was awarded the tax liens for the Properties. On November 26, 2018, the Kanawha County Clerk's Office issued two notices to redeem (the "Notices") with respect to the Properties (Trial Exs. 1C & 2C) indicating, *inter alia,* that the tax liens on the Properties were sold to Christiana Trust and that "a tax deed for such real estate will be made to [Christiana Trust] on or after the first day of April, 2019, as provided by law unless before that date you redeem such real estate with the County Clerk of Kanawha County, West Virginia."

The Notices were sent to both the newspaper for publication and to a list of addressees by certified and regular mail (Tr. 14:17, 15:4-6). Affidavits of publication of the Notices in the Charleston Gazette-Mail were provided by Christiana Trust as exhibits at the Hearing. (Trial Exs. 1E and 2E). Additionally, Christiana Trust provided proof of delivery of the Notices on all the parties that had signed for them via certified mail by the United States Postal Service. (Trial Exs. 1D and 2D). The Notices were mailed to the following recipients: (1) City of Charleston; (2) IRS Advisory Group; (3) Dale W. Steager, Commissioner for the West Virginia State Tax Department; (4) Corotoman, Inc.; (5) Corotoman, Inc. c/o John H. Wellford, III; (6) Katherine Wellford, Trustee; (7) Arthur Standish, Trustee; (8) Sarah McCarty, Trustee; (9) Huntington National Bank; (10) George Ciprianai, Trustee; (11) C. David Robertson, Trustee; and (12) City of Charleston City Collector. (Trial Exs. 1F and 2F). The Notice to Redeem that was sent to Ms. Wellford regarding the Association Drive Property was returned as unclaimed, and no further efforts were made to serve her with the notice.[1]

On March 29, 2019, one business day before the redemption period expired, Corotoman filed its small business Chapter 11 petition, thereby staying any action by the Kanawha County Clerk's Office to issue tax deeds for the Properties to Christiana Trust. Christiana Trust filed the Motion seeking to modify the automatic stay for cause and requests abandonment of property of the estate pursuant to 11 U.S.C. §§ 362(d)(1) and 554, respectively, to allow for the issuance of the tax deeds by the Kanawha County Clerk's Office.

Ms. Wellford filed three proofs of claim in the above-captioned case (claims 10-1, 11-1, and 12-1). Claims 11-1 and 12-1 allege that Ms. Wellford holds two secured claims for "money

---

[1] Counsel for Christiana Trust admitted this fact at the Hearing, stating that "the notice to redeem for [the Association Drive Property] was . . . returned unclaimed. And the – that there were no further efforts to give notice to Ms. Wellford after that notice was returned unclaimed." He further stated that "that would present a violation of due process under the law, pursuant to relevant case law." [Tr. 3: 20-25, 4: 1-3].

lent," and she asserts that she holds notes and deeds of trust that purport to give her a security

interest in the Properties.  She states in her affidavit accompanying her objection to the Motion

that the Notices were not served upon her, and she had never been advised of the tax sale, nor her

right to redeem the Properties.


**B.    Arguments of the Parties**

Christiana Trust contends that the Motion should be granted because Ms. Wellford received

adequate notice of the tax sales, that the Notices were properly processed and served in accordance

with W.Va. Code § 11A-3-21, and that it is therefore entitled to relief from the stay so that the tax

deeds may be issued.

Christiana Trust first argues that, under both the U.S. Constitution and West Virginia law,

Ms. Wellford was provided notice of the tax sale and her right to redeem such that her due process

rights were not violated.  It asserts that service via certified mail, return receipt requested, satisfies

the applicable legal standards.  With regards to the returned mailing relating to the Association

Drive Property, Christiana Trust argues that due process is satisfied because, although Ms.

Wellford did not receive actual notice of her right to redeem, the United States Supreme Court

simply requires that the method of service be reasonably certain to inform the affected party.

From there, Christiana Trust asserts that Corotoman's filing for bankruptcy protection does

not toll the expiration of the redemption period, subject to 11 U.S.C. § 108(b), which states the

following:

> (b) Except as provided in subsection (a) of this section, if applicable
> nonbankruptcy law, an order entered in a nonbankruptcy
> proceeding, or an agreement fixes a period within which the debtor
> or an individual protected under section 1201 or 1301 of this title
> may file any pleading, demand, notice, or proof of claim or loss,

cure a default, or perform any other similar act, and such period has
not expired before the date of the filing of the petition, the trustee
may only file, cure, or perform, as the case may be, before the later
of –

(1) the end of such period, including any suspension of such
period occurring on or after the commencement of the case;
or
(2) 60 days after the order for relief.

Therefore, Christiana Trust contends that the redemption period extended for only 60 days

from the date the petition was filed. *See generally In Re Froehle,* 286 B.R. 94 (B.A.P. 8th Cir.

2002). And, thus, Ms. Wellford missed her window to redeem the Properties.

Finally, Christiana Trust argues that relief from the stay is appropriate because the issuance

of the tax deed falls within the ministerial act exception to the automatic stay, as there is nothing

more for either Christiana Trust or the state to do but for the state to issue a deed. The Bankruptcy

Code's automatic stay does not apply to acts of government officials that are "delineated by, say,

a law or a judicial decree with such a crystalline clarity that nothing is left to the exercise of the

official's discretion or judgment, the resultant act is ministerial." *In re Soares,* 107 F.3d 969, 974

(1st Cir. 1997). In that same vein, Christina Trust further cites a case from the United States Court

of Appeals for the Fourth Circuit: "[w]e may approve the award as valid under the [automatic]

stay only if the panel decided it . . . before [the petition date], leaving for post-petition achievement

only the clerical act of recording the award." *In re Knightsbridge Dev. Co.,* 884 F.2d 145, 148

(4th Cir. 1989).

On November 12, 2019, Ms. Wellford filed an objection to the Motion arguing that it

contains numerous erroneous assertions. For starters, she contends that there is evidence

suggesting that service of the Notices was improper and that the tax sales were therefore invalid.

Ms. Wellford asserts that pursuant to West Virginia Code § 11A-3-22(b), a Notice of the Right to

Redeem the property from the sale must be served upon all parties having a right of redemption

and/or interest in the real property proposed to be sold in the same manner as for service of a

summons if they are in within the State of West Virginia.  In *Rollyson v. Jordan,* 205 W. Va. 368

(1999), the West Virginia Supreme Court of Appeals held that

> the persons entitled to notice to redeem in conjunction with a
> purchaser's application for a tax deed, pursuant to W. Va. Code §
> 11A-3-19(a)(1) . . . are those persons who are permitted to redeem
> the real property subject to a tax lien or liens, as contemplated by
> W. Va. Code § 11A-3-23(a) . . . , which persons include "the owner"
> of such property and "any other person who was entitled to pay the
> taxes" thereon.

*Rollyson*, 205 W. Va. at 374-75.  The Court in *Wells Fargo Bank, N.A. v. Up Ventures II, LLC,*

223 W. Va. 407 (2009) reaffirmed this holding.  Ms. Wellford maintains that she never received

the Notices and that the manner in which they were served does not meet the requirements for due

process.  In her testimony, Ms. Wellford asserts that she neither evaded nor refused to accept

service, nor was she ever approached by a Deputy Sheriff or process server for the purpose of

receiving notice of the right to redeem (Tr. 57:4-13).  She also relies heavily on the fact that the

Notices were sent to "Katherine Wellford, Trustee," instead of simply "Katherine Wellford," as

she in her individual capacity was the entity holding a security interest in the Properties.

Ms. Wellford also contends that under 11 U.S.C. § 108, she should be provided additional

time for her right to redeem.  Lastly, Ms. Wellford is of the opinion that the issuance of the tax

deeds is not a "ministerial task" which would be an exception to the automatic stay.

## II.

**A.      Governing Authority**

a.   <u>Notices of the Right to Redeem</u>

"In a series of cases, beginning with *Mullane v. Central Hanover Bank & Trust Co.,* the Supreme Court has set forth the requirements for constitutionally adequate notice of an impending deprivation of property." *Plemons v. Gale*, 396 F.3d 569, 573 (4th Cir. 2005). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1950). "The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance . . . ." *Id.* at 314. The key focus is the "reasonableness" of the means chosen by the entity affecting service. *Id.* at 315. Whether a particular method of notice is reasonable depends on the outcome of a balancing test: "[a]gainst this interest of the State we must balance the individual interest sought to be protected by the Fourteenth Amendment. *Id.* at 314. "It is not [the Supreme Court's] responsibility to prescribe the form of service that the [State] should adopt." *Greene v. Lindsey,* 456 U.S. 444, 455 n.9, (1982). "It is the primary responsibility of the State to strike this balance, and [the Supreme Court] will upset this process only when the State strikes the balance in an irrational manner." *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 801 (1983).

West Virginia Code § 11A-3-22 governs service of process in the present situation because "[t]he determination of property rights in the assets of a bankrupt's estate is generally a matter of state law." *Merritt Dredging Co., Inc. v. Campbell (In re Merritt Dredging Co., Inc.),* 839 F.2d

203, 205 (4th Cir. 1988) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)).  "Property

interests are created and defined by state law. . . . there is no reason why such interests should be

analyzed differently simply because an interested party is involved in a bankruptcy proceeding."

*Merritt Dredging*, 839 F.2d at 206 (quoting *Butner*, 440 U.S. at 55).  Therefore, insomuch as the

question here is one of ownership and interest in Corotoman's real property based on a West

Virginia tax sale and the associated notices of right to redeem, this Court will apply the law of

West Virginia.

In West Virginia, the highest bidder on a tax lien at a sheriff's sale receives a certificate of

sale describing, inter alia, "the real estate subject to the tax lien that was sold, the total amount of

all taxes, interest, penalties and costs paid for each lot or tract and the rate of interest to which the

purchaser is entitled upon redemption." W. Va. Code § 11A-3-14(c).  To secure a deed to the real

estate subject to the tax lien or liens purchased at the sheriff's sale, the purchaser must "[p]repare

a list of those to be served with notice to redeem and request the State Auditor to prepare and serve

the notice" between August 31 and October 31 of the year following the sheriff's sale. W. Va. Code

§ 11A-3-19(a)(1).  The purchaser is responsible for providing the State Auditor with the addresses

of those to be served with notices. *See id.; see also* W. Va. Code § 11A-3-22(d).  Section 11A-3-

22(d) states:

> (b) The notice shall be served upon all persons residing or found in
> the state in the manner provided for serving process commencing a
> civil action, or by certified mail, return receipt requested, or other
> types of delivery service courier that provide a receipt. The notice
> shall be served on or before the 30th day following the request for
> the notice.

W. Va. Code § 11A-3-22(d).

The State Auditor thereafter prepares and serves redemption notices, which specify that

redemption must occur by March 31 of the following year and that a tax deed will issue to the

purchaser on or after April 1 of that year absent redemption. *See* W. Va. Code § 11A-3-21 (providing the template used by the State Auditor for the preparation of redemption notices); W. Va. Code § 11A-3-22 (providing for service of redemption notices). The owner of the underlying real estate "or any other person who was entitled to pay the [ad valorem] taxes" thereon "may redeem at any time before a tax deed is issued for the real estate." W. Va. Code § 11A-3-23. If the real estate described in the notice is not redeemed within the time specified in the notice, then from April 1 of the second year following the sheriff's sale until the expiration of the lien evidenced by a tax certificate of sale . . . the State Auditor or his or her deputy shall upon request of the purchaser make and deliver to the clerk of the county commission, a quitclaim deed for the real estate. W. Va. Code § 11A-3-27(a). Upon obtaining such a deed, the purchaser acquires, "all right, title and interest, in and to the real estate, as was, at the time of the execution and delivery of the deed, vested in or held by any person who was entitled to redeem . . . ." W. Va. Code § 11A-3-30(a); *United States v. Mountaineer Mfg.,* No. 2:19-cv-00417, 2021 WL 867853, at *14 (S.D. W. Va. Mar. 8, 2021).

Persons who hold the right to redeem include "those persons who are permitted to redeem the real property subject to a tax lien or liens, . . . which persons include 'the owner' of such property and 'any other person who was entitled to pay the taxes thereon.'" *Rollyson v. Jordan*, 205 W. Va. 368, 374-75 (1999). The *Rollyson* case involved lienholders of property; they had not received notice of their right to redeem the property. *Id.* at 380. In analyzing the *Rollyson* situation, the court looked to a clause in the deed of trust which stated that, should the borrower under a deed of trust fail to pay taxes on the property, the lender or holder of the note may opt to pay those taxes. *Id.* at 375. The deeds of trust in the instant case contain the same type of provision: if the borrowed fails to pay any taxes, the beneficiary/lender has the option of making

those payments [P.O.C. 11-1, Ex. 3; P.O.C. 12-1, Ex. 4].  Furthermore, W. Va. Code § 11A-1-9

provides that "any person having a lien on the land . . ." is entitled to pay the taxes thereon.  W.

Va. Code § 11A-1-9.

West Virginia law "allows a person to set aside a tax-sale deed if she shows 'by clear and

convincing evidence' that the purchaser 'failed to exercise reasonably diligent efforts to provide

notice . . .'" *Plemons v. Gale*, 396 F.3d 569, 572 (4th Cir. 2005).  Specifically, for tax sales,

"diligence requires that reasonable efforts be made to identify and locate parties with an interest

in the property," and those parties "must be provided notice of the impending sale using a method

reasonably calculated . . . to inform them of the sale." *Id.* at 574.  The *Plemons* case dealt with

notices sent by certified mail, return receipt requested. *Id.* Some of the notices were returned as

undeliverable. *Id.* In discussing courts' views regarding the prompt return of undeliverable mail,

"in case after case they have held that the reasonable diligence standard requires a party charged

with notice to follow up when a mailing has been returned as unclaimed or undeliverable," as such

a return "should [be] a red flag for some further action." *Id.* at 575.  The *Plemons* Court ruled that,

should mail be returned as undeliverable or unclaimed, the "reasonable diligence standard

mandated by *Mullane* and its progeny required some followup effort . . . ." *Id.* at 576.

However, "a tax sale need not be set aside in every case in which initial attempts at mailed

notice have failed and no further mailed notice is sent." *Id.* at 577.  The totality of the

circumstances should be taken into account, including the "practicalities and peculiarities," when

determining if notice was sufficient. *Id.* at 577.  Importantly, "there may be instances when

reasonable follow-up efforts would yield no different address; and the Constitution only requires

reasonable efforts, . . . not receipt of actual notice." *Id.* at 577.  Notice by publication *may* satisfy

the reasonable diligence test in situations where an entity's location could not be ascertained with

due diligence. *Id.* at 573 (citing *Mullane*, 339 U.S. at 315). In contrast, though, "notice by publication [does] not suffice for those . . . whose location was ascertainable . . . ." *Id.* at 573 (citing *Mullane*, 339 U.S. at 318).

Under West Virginia law, "this due process inquiry creates a conflict of interest because the party charged with providing this constitutionally required notice is also the tax lien purchaser . . ." and, thus, courts must "strictly scrutinize the efforts of a tax lien purchaser to ensure that they are 'such as one desirous of actually informing the absentee' might reasonably adopt." *Plemons v. Gale*, 382 F.Supp.2d 826, 830 (S.D. W. Va. 2005) (quoting *Mullane*, 306 U.S. at 315).

### b. Time for Redemption and 11 U.S.C. § 108

Section 108 of the Bankruptcy Code contains three subsections which allow for the extension of time limits in certain situations. 11 U.S.C. § 108. Subsection (a) provides for extensions of statutes of limitations for actions by a debtor. *Id.* Subsection (b) allows a trustee 60 days to take certain actions. *Id.* Subsection (c) covers extensions of time for creditors to commence or continue civil actions in a court, other than the bankruptcy court, against a debtor. *Id.; see also Daff v. Good (In re Swintek)*, 906 F.3d 1100, 1103 (9th Cir. 2018).

The only subsection applicable to actions taken by a creditor is (c). *Id.* Courts have determined that the important language of § 108(c) is the "commencing or continuing a civil action" portion. *Swintek*, 906 F.3d at 1104. It is vital to remember, though, that § 108(c) applies only to actions against a debtor (or a co-debtor), and not another creditor. 11 U.S.C. § 108(c) ("[I]f applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim *against the debtor* . . . .") (emphasis added). One of its main purposes is to extend "state statutes of limitation on claims by creditors who are

prevented by the automatic stay from taking timely action to assert those claims." *Goldsmith v.*

*LBM Financial, LLC (In re Loucheschi, LLC)*, 496 B.R. 41, 47 (Bankr. D. Mass. 2013).   And,

although § 108(c) is a tool most often used by creditors, "the relief of § 108(c) does not turn upon

the party seeking the relief, but rather upon the relief sought and the circumstances under which it

is sought."   *In re Meredith*, 337 B.R. 574, 577 (Bankr. E.D. Va. 2005) (citing *In re Hoffinger*

*Indus., Inc.*, 329 F.3d 948, 953 (8th Cir. 2003)).


    c.  <u>The Automatic Stay</u>

    In requesting a modification of the automatic stay and abandonment of property of the

estate, Christiana Trust invokes 11 U.S.C. § 362(d)(1).

    Section 362 governs the automatic stay in bankruptcy cases and it is automatically triggered

by the filing of a bankruptcy petition.   Section 362(a) provides that the filing of

a bankruptcy petition "operates as a stay, applicable to all entities" of many collection actions

including:

> (2) the enforcement, against the debtor or against property of the
> estate, of a judgment obtained before the commencement of the case
> under this title;
> (3) any act to obtain possession of property of the estate or of
> property from the estate or to exercise control over property of the
> estate;
> (4) any act to create, perfect, or enforce any lien against property of
> the estate;
> (5) any act to create, perfect, or enforce against property of the
> debtor any lien to the extent that such lien secures a claim that arose
> before the commencement of the case under this title; [and]
> (6) any act to collect, assess, or recover a claim against the debtor
> that arose before the commencement of the case under this title;   .
> . . .

"In other words, the stay protects the bankruptcy estate from dismemberment via a creditor race

to the courthouse in favor of a systematic and equitable asset distribution." *Branch Banking & Tr.*

*Co. v. Constr. Supervision Servs. (In re Constr. Supervision Servs.)*, 753 F.3d 124, 127 (4th Cir.

2014) (citing *Safety-Kleen, Inc. v. Wyche,* 274 F.3d 846 (4th Cir. 2001)).  Effective simultaneously

"with the creation of the bankruptcy estate, an automatic stay engages to protect the property

included therein from acts to obtain possession or exercise control over it." *Edwards v. B&E*

*Transp., LLC (In re Edwards),* 607 B.R. 530, 534 (Bankr. W.D. Va. 2019) (citing *Sexton v. Dep't*

*of Treasury, IRS (In re Sexton)*, 508 B.R. 646, 657 (Bankr. W.D. Va. 2014)).

 The provisions of 11 U.S.C. § 362 serve as a powerful tool not only to protect the assets of

the estate, but also to protect debtors from pesky creditors.   "[The automatic stay] protects debtors

not only from the commencement or continuation of legal actions against them, but also from any

acts to obtain possession of, create or enforce liens against, or collect assets included in the debtor's

estate." *Sexton*, 508 B.R. at 657.  The automatic stay is not a suggestion, but rather a command.

*Edwards v. B&E Transp., LLC (In re Edwards),* 607 B.R. 530, 534 (Bankr. W.D. Va. 2019).

 However, in certain situations, the stay can be lifted to allow entities to proceed against a

debtor or property of a debtor.  One of those instances is contained in 11 U.S.C. § 362(d), which

states that

> [o]n request of a party in interest and after notice and a hearing, the court
> shall grant relief from the stay provided under subsection (a) of this section
> . . .
>> (1) for cause, including the lack of adequate protection of an interest
>> in property of such party in interest . . . ; or
>> (2) with respect to a stay of an act against property under subsection
>> (a) of this section if –
>>> (A) the debtor does not have an equity in such property; and
>>> (B) such property is not necessary to an effective
>>> reorganization.

11 U.S.C. § 362(d).  These sections apply to any property of the estate.  11 U.S.C. § 362(a)(3).

"The decision whether to modify, condition or annul the bankruptcy stay under section 362(d) is

committed to bankruptcy court discretion and is to be determined by examining the totality of the circumstances . . . ." *In re Freeman*, 352 B.R. 628, 632 (Bankr. N.D. W. Va. 2006) (quoting *In re Brown*, 311 B.R. 409, 412 (E.D. Pa. 2004)).

If a motion for relief is pursued under § 362(d)(1), the moving party must make an initial showing of "cause." *In re Sonnax Indus., Inc.* 907 F.2d 1280, 1285 (2d Cir. 1990). Then, the burden shifts to the debtor to demonstrate that adequate protection is possible. *Id.*

When lifting the stay for "cause" under § 362(d)(1), a court must exercise its discretion and "consider what constitutes cause based on the totality of the circumstances in each particular case." *In re Behanna*, 381 B.R. 631, 643 (Bankr. W.D. Penn. 2008) (citing *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997)); *see also Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir. 1994) ("Because the Bankruptcy Code provides no definition of what constitutes "cause," the courts must determine when discretionary relief is appropriate on a case-by-case basis."). That means "balanc[ing] potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *In re 210 West Liberty Holdings, LLC*, 400 B.R. 510, 514 (Bankr. N.D. W. Va. 2009) (quoting *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992)).

"[T]he term 'cause' is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations." *In re Indian River Estates, Inc.* 293 B.R. 429, 433 (Bankr. N.D. Ohio 2003) (citing *In re Texas State Optical Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995)); *Behanna*, 381 B.R. at 643; *see also Claughton*, 33 F.3d at 5. Adequate protection may be provided in the form of an equity cushion, a replacement lien, or regular payments to the secured creditor. *In re ASI Reactivation, Inc.*, 934 F.2d 1315, 1320 (4th Cir. 1991); *In re Orlando Coals, Inc.*, 6 B.R. 721, 723-24 (Bankr. S.D. W. Va. 1980). "A debtor's

history or making or failing to make payments under a bankruptcy plan, as well as its history of payments under a promissory note, are both significant when determining whether there is adequate protection." *McCullough v. Horne (In re McCullough)*, 495 B.R. 692, 698 (Bankr. W.D.N.C. 2013).

Although not stated anywhere in § 362, "there is a settled exception that permits the performance of 'ministerial acts' during the automatic stay . . . ." *Skillforce, Inc. v. Hafer*, 509 B.R. 523, 530-31 (E.D. Va. 2014). Those "ministerial acts" have been defined as those in which "an official's duty is delineated by . . . a law or judicial decree with such crystalline clarity that nothing is left to the exercise of the official's discretion or judgment," and are "essentially clerical in nature." *In re Soares*, 107 F.3d 969, 974 (1st Cir. 1997). Examples of these acts are: "post-petition entry of a previously-ordered judgment on the docket" and "routine certification by the clerk." *Skillforce*, 509 B.R. at 531. On the other hand, acts that are "essentially judicial," such as the setting of a status conference and the finding of a default, are not ministerial. *Soares*, 107 F.3d at 974-75. Courts have found that, in the context of a tax sale, "the purchaser's exchange of the certificate of sale received at the tax sale for the deed to the property is merely a ministerial act made necessary by the expiration of the redemption period and by the taxpayer's failure to timely redeem his property." *In re Cooke*, 127 B.R. 784, 786-87 (Bankr. W.D.N.C. 1991); *see also In re Rugroden*, 481 B.R. 69, 79 (Bankr. N.D. Cal. 2012) ("The majority view is that the issuance or recording of a deed after expiration of a redemption period is ministerial.")

d. <u>Abandonment</u>

Bankruptcy Code § 554 governs abandonment of property of the estate. It states the following:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
> (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
> (c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
> (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

The purpose of this Code section is to facilitate expeditious and equitable asset distribution by permitting the trustee to abandon property that simply consumes and drains the resources and income of the estate. *In re Smith-Douglass, Inc.,* 856 F.2d 12, 16 (4th Cir. 1988).

**B.   Analysis**

The Court's analysis of the pending matter is a three-step process: first, the Court must look to whether the Notices were sufficient to provide Ms. Wellford notice of her right to redeem the Properties. If the Court finds that the Notices were sufficient and that Christiana Trust is entitled to the tax deeds, then it must decide whether the time for redemption has passed or whether it was tolled. At that point, the Court must move to the question of whether relief from the automatic stay is appropriate so that the tax deeds may be given to Christiana Trust. And, lastly,

the Court must decide whether the Properties should be abandoned from the Estate. The Court will undergo this analysis separately for each party.

Before doing so, however, the Court needs to address certain facts which pertain to the Properties. During the Hearing, much ado was made of the fact that Ms. Ellis, counsel to Ms. Wellford, had sent an e-mail communication to Ms. Wellford which included information regarding the tax status of the Properties.

Ms. Wellford denied seeing an email from Sarah Ellis regarding these matters (Tr. 62: 21-25 and 63: 1). Ms. Ellis served as counsel to Ms. Wellford during the time these events occurred. She testified that she had received the Notices (Tr. 34: 4-5). Following receipt of those documents, Ms. Ellis transmitted them to Brian Parrot, an employee of City National Bank who works with Ms. Wellford's account there. (Tr. 34 : 20-24). Although Ms. Ellis did not send the Notices directly to Ms. Wellford, she sent an email to Ms. Wellford and Mr. Parrot in January of 2019, which included information about the Properties (Tr. 35: 2-6). A summary of the Debtor's tax status was attached to the email, and below the summary, was language stating "[t]he following link assessments must be redeemed by March 30, 2019, in order to avoid a deed of conveyance to the purchaser of the tax lien." (Tr. 38: 25, 39: 1-3). Additionally, Ms. Ellis provided statements of redemption of delinquent property from the Kanawha County Clerk's Office (Tr. 39: 24-25, 40: 1-3).

The Court's understanding is that Christiana Trust believes this action should be considered when evaluating whether Ms. Wellford had sufficient notice of her right to redeem. This is a red herring. The responsibility for serving the Notices and for ensuring that any entity with an interest in the Properties lies solely with the purchaser, Christiana Trust. It is irrelevant in this situation whether a third party may have provided Ms. Wellford with knowledge about the tax sales; in fact,

it is likely that Christiana Trust had no idea at the time that Ms. Ellis had sent the e-mail communications to Ms. Wellford and was very likely under the impression that its attempts at serving the Notices were the only means by which Ms. Wellford would have knowledge of her right to redeem.   Therefore, Christiana Trust cannot rely on those e-mails to argue that Ms. Wellford's due process rights were not violated.

     a.  <u>The Association Drive Property</u>

The notice of right to redeem sent to Ms. Wellford was returned as undeliverable.   There is no question of that based on both the record and the comments of counsel at the Hearing.   As discussed previously, in *Plemons v. Gale*, the Fourth Circuit stated that, when mail has been returned as unclaimed or undeliverable, a party is charged with the responsibility of following up. There was no follow-up in this case.   The notice was not re-sent, nor is the Court aware of any additional attempts to contact Ms. Wellford regarding the Association Drive Property. Furthermore, in situations where the addressee's location can be ascertained, notice by publication is not sufficient.   So, although Christiana Trust publicized the notice to redeem the Association Drive Property, that effort is not sufficient to satisfy the standards laid out by *Plemons* and *Mullane.*   Thus, the Court need not make any further determinations with regard to this property; Ms. Wellford did not receive notice and was deprived of her due process rights.   Therefore, the Court cannot grant the Motion as it relates to the Association Drive Property because it is based upon a flawed tax sale process.   Christiana Trust cannot prove that it has an interest in the property.

b.  <u>The Northgate Property</u>

***Notice of the Right to Redeem***

The notice of Ms. Wellford's right to redeem the Northgate Property (the "Northgate Notice") was delivered to her address, was signed for at that address, and the receipt was provided to Christiana Trust.

Ms. Wellford contends that she never received the Notices, including the Northgate Notice. She claims, additionally, that because the Northgate Notice was addressed to her as Trustee, and because her husband signed for the mail, the service of the notice was inadequate. She testified at the Hearing that she never received either of the Notices by certified mail (Tr. 57: 1-3). She further stated that she did not authorize her husband, John Wellford, in any capacity, to accept certified or registered mail on her behalf (Tr. 62: 5-10). She claims that her husband never delivered the Northgate Notice to her, and he never told her that she had been sent a notice to redeem the Northgate Property. Furthermore, Ms. Wellford asserts that she never attempted to evade service of process, she never refused to accept certified mail that was attempted to be delivered to her, and she was never approached by a deputy sheriff or process served for the purpose of receiving notice of the right to redeem (Tr. 57: 4-13). Although she asserts that John Wellford, her husband, did not have authorization, in any capacity, to receive certified or registered mail on her behalf, Ms. Wellford testified that it was a pattern for her to hand any notices [to redeem] and/or mail over to Mr. Wellford because he was the most aware of the Properties (Tr. 67: 24-25 and 68:1-3). In fact, she stated that "John has never given me any of the certified letters he has received. He has taken them to the office, and I don't know what he does with them there." (Tr. 63: 15-18). Such was the case for a prior notice to redeem that was sent by certified mail to Ms. Wellford who upon receipt, and without reviewing the content, handed it over to Mr. Wellford (Tr. 67: 9-25 and 68:

1-3) and (Ex. 7).  The Court sees clearly that the prior notice to redeem in Exhibit 7 is addressed

to Katherine Wellford, Trustee, and the signature of the recipient is Katherine Wellford.  In her

testimony, Ms. Wellford confirms that the signature belongs to her (Tr. 67: 14-15).  She also

confirmed that she took action on that notice and actually redeemed the property (Tr. 65: 4-24, 66:

1-20).  She stated that she has lived at 1615 Ridgeview Road, Charleston, WV 25314 for thirty-

two years (Tr. 56: 6-8).

  The Court, as an aside, finds John Wellford's testimony at the Hearing not entirely credible.

Mr. Wellford claims that when he received the certified letter, he believed that it was for him

("because certified letters were generally to [him]") and after signing the receipt, he took the

certified letter to his office and left it there without checking the content (Tr. 70: 7-12, 71: 17-24).

After signing for the certified mail, Mr. Wellford testified that he did not open the mail, nor did he

inform Ms. Wellford that he had received it.  (Tr. 71: 12-18).  Instead, he "took it to the office,"

believing that it was for him, because the mail was a "type [of] thing[] [he] always took to the

office."  (Tr. 71: 21-25, 72: 1-2, 72: 16-17).  Mr. Wellford further stated, later in the Hearing, that

he had a specific recollection of taking the notice in question to the office.  (Tr. 72: 22-24).  He

also claims to have never received, nor signed for, any other mail on behalf of his wife.  (Tr. 72:

3-5).  During cross examination, John Wellford stated that he had a specific recollection of his

conversation with the postman who delivered the notice.   (Tr. 72: 22-24).  These assertions

contrasted with the statements Mr. Wellford made during his deposition.  Notably, he asserted that

he did not recall signing the notice on behalf of Ms. Wellford, nor did he recall signing when the

postman came to deliver the mail. (Tr. 74: 18-21).

  The Court is also curious about the apparent lackadaisical manner in which the certified

mail in question was treated by the Wellfords.  Both Katherine and John Wellford appear to be

businesspeople well-versed in owning real estate and dealing with the attendant responsibilities. Ms. Wellford owns an office building called the Forbes Center at Northgate Business Park. She is clearly experienced in owning and managing property. It is *very* odd that an individual who owns and manages property, such as Ms. Wellford, would simply "hand off" certified letters without studying them, or, at least, making sure she knew about the contents. In his testimony, Mr. Wellford led the Court to believe that he receives certified mail all the time pertaining to Corotoman and/or his properties. This Court cannot imagine that Mr. Wellford received certified mail and simply did not open the document; it is, again, inconceivable that any individual with even a bit of business acumen would ignore a certified letter that may very well be of importance. Distilling the information provided by the parties into only the important facts makes the situation crystal clear. The Northgate Notice was sent by certified mail to Ms. Wellford at the residence where she has lived for the past thirty-two years. The proof of delivery shows that it was received and signed for by John Wellford (Tr. 59: 2-6). Ms. Wellford testified that it was her practice to simply hand certified mail over to her husband. That, in and of itself, does not invalidate the tax sale. It is clear to the Court that the manner in which the Northgate Notice was sent was proper. Notices to redeem sent in exactly this manner to Ms. Wellford had been acted upon, by her, in the past. It makes no difference whether Mr. Wellford was "authorized" to accept mail on his wife's behalf. The fact of the matter is that the Northgate Notice was sent to Ms. Wellford via certified mail; the mail was delivered and a return receipt confirming delivery at the address was generated. This method of service meets the standards set out in *Plemons* and *Mullane*, which simply require that reasonable efforts be made by the purchaser to use a method reasonably calculated to inform other interested parties of the sale. What Mr. and Mrs. Wellford

did with the Northgate Notice following proper delivery has no bearing on the propriety and reasonableness of service.

### *Time for Redemption*

Ms. Wellford, as an aside in her Response to the Motion, mentions that she believes she has been afforded additional time for her right to redeem based on § 108. However, as discussed above, § 108 applies only to actions commenced or continued *against the debtor*. When looking at the essence of the action, it is clear that it is a dispute between two creditors. In fact, Corotoman is so uninvolved in this matter that it did not even respond to the Motion. Corotoman is not attempting to redeem the property from Christiana Trust. Rather, Ms. Wellford is attempting to argue that she still has a right to redeem against Christiana Trust. This is far from the type of action for which § 108 was created. Therefore, the time for Ms. Wellford's right to redeem was not expanded, and her right to redeem the Northgate Property has expired.

### *Relief from the Automatic Stay*

The Court now comes to the question of whether Christiana Trust is entitled to relief from the automatic stay so that it may receive the tax deed for the Northgate Property from the Kanawha County Clerk. Courts have been clear that the processing of a tax deed following the expiration of the redemption period is a "ministerial act" which is not stayed by § 362. It is a task that requires no judicial input or thought, really; the Kanawha County Clerk processes and transmits the tax deeds once certain time limits have expired. There is no sort of evaluative thought process undertaken by the Clerk; her duty is one that is crystal clear and requires no exercise of her judgment or discretion. Therefore, the Court finds that relief from the automatic stay is appropriate in this instance to allow the tax deed for the Northgate Property to pass to Christiana Trust.

### *Abandonment*

The Court finds that, frankly, abandonment of the Northgate Property has not been fully briefed in the parties' submissions.  Christiana Trust simply states in its Motion that it seeks abandonment under § 554, and Ms. Wellford does not reference abandonment in her Objection to the Motion. Therefore, the Court declines to make a ruling on Christiana Trust's request for abandonment.

### III.

After evaluating the evidence presented to this Court, it is clear that only one of the Notices, the Northgate Notice, was properly served on Ms. Wellford.  Therefore, the tax sale on the other property, the Association Drive Property, cannot support a request for relief from stay for the purpose of transmitting the tax deed to the purported purchaser.  However, because the Northgate Notice was properly served and the time for redemption was not tolled, relief from the automatic stay is appropriate.  Accordingly,

**IT IS ORDERED** that the Motion to Modify the Automatic Stay and Request for Abandonment be, and is hereby, **GRANTED** in part, and **DENIED** in part.

**IT IS FURTHER ORDERED** that the Motion to Modify the Automatic Stay and Request for Abandonment with regards to the Association Drive Property be, and is hereby, **DENIED IN FULL.**

**IT IS FURTHER ORDERED** that the Motion to Modify the Automatic Stay and Request for Abandonment with regards to the Northgate Property be, and is hereby, **GRANTED TO THE EXTENT THAT THE AUTOMATIC STAY IS LIFTED.**

**IT IS FURTHER ORDERED** that the Motion to Modify the Automatic Stay and Request for Abandonment with regards to the Northgate Property be, and is hereby, **DENIED AS TO ABANDONMENT OF THE PROPERTY.**